**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY PEARSON,<br><br>    Plaintiff,<br><br>    v.<br><br>DONNA SWEENEY, et al.,<br><br>    Defendants. | Civil Action No. 20-2065 (KMW) (MJS)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court on Defendants' Motions seeking Summary Judgment in this prisoner civil rights matter. (ECF No. 82.) Plaintiff filed a response to the motion (ECF No. 87), to which Defendants replied. (ECF No. 94.) For the following reasons, Defendants motions shall be granted, and judgment shall be entered in Defendant's favor as to the sole claim of Plaintiff's amended complaint. (ECF No. 42.)

I.   BACKGROUND

In his amended complaint, Plaintiff asserted that, after an interstate prison transfer from New Jersey to New Hampshire, he was misclassified as a sex offender by New Hampshire officials and forced to undergo registration and sex offender treatment. (ECF No. 42 at 2-3.) This classification was made despite Defendant Palumbo explicitly telling New Hampshire officials that Plaintiff had not been convicted of a sex offense. (*Id.* at 3.) After his misclassification, Plaintiff alleges that he wrote letters and made phone calls to Defendants Sweeney, Bailey, and

Tobolski, but no change in his classification resulted from his letter. (*Id.*) Plaintiff alleges that he was thereafter assaulted by inmates in New Hampshire based on the misapprehension that he was a sex offender. (*Id.* at 7-8.) Plaintiff believes this amounts to a Due Process violation as he suffered harm as a result of the misclassification by New Hampshire officials which was not corrected. (*Id.* at 8-9.)

The parties largely agree on the main factual points in this matter. (*See* ECF No. 82-2; ECF No. 87-1.) The named Defendants at the relevant times were all employees of the New Jersey Department of Corrections: Defendant Sweeny was a supervising administrative analyst, Defendant Tobolski was a senior investigator; Defendant Bailey was a classifications officer, and Defendant Palumbo was a classifications officer working in the Office of Interstate Interrogatories. (ECF No. 82-2 at 2.) Until March 2019, plaintiff was housed at South Woods State Prison in New Jersey. Plaintiff thereafter requested a transfer to New Hampshire. (*Id.*) On March 20, 2019, Plaintiff was transferred to the New Hampshire State Prison for Men in Concord. (*Id.*) As part of that transfer, New Hampshire authorities were provided with an NJDOC "face sheet," a document detailing information on the prisoner being transferred, which clearly indicated that Plaintiff was not a sex offender and had not been convicted of sex offenses. (*Id.*)

On March 21, 2019, shortly after the transfer, Jensine Hilliard, an employee of the New Hampshire Department of Corrections, emailed Defendant Palumbo asking if Plaintiff was a sex offender. (*Id.*) Palumbo responded the same day, stating that "offender Pearson is NOT a sex offender" and offered to provide an updated face sheet making this fact more explicit. (*Id.*) Palumbo sent Hilliard an updated face sheet the following day, which once again indicated Plaintiff

was not a sex offender and had no sex offenses in his record.[1] (*Id.* at 2-3.) Several weeks later, upon his post-transfer release from a segregated housing unit, Plaintiff spoke with New Hampshire officials who informed him he would have to register as a sex offender to move into a normal prison unit. (*Id.*) Plaintiff wrote a letter to Defendant Sweeney and called Tobolski in April 2023, asking them about his being required to register under Megan's Law, the first time he raised the issue to New Jersey officials. (*Id.* at 3.) Plaintiff also requested his classification be fixed by New Hampshire officials, who continued to require him to be treated as a sex offender despite prior clarifications from New Jersey officials. (*Id.*)

On May 12, 2019, Plaintiff was approached by other prisoners in his cell and told to move. (*Id.*) Plaintiff refused, and the men attacked Plaintiff, calling him a "Skinner," a prison term for pedophiles. (*Id.* at 3-4.) Plaintiff later confronted a New Hampshire officer he believed told these other inmates, who also called him a Skinner. (*Id.* at 4.) The following day, Plaintiff was taken back to New Jersey for a court date and NJDOC officials learned of the assault and immediately arranged for his transfer back to New Jersey. (*Id.*) Contrary to the assertions in the amended complaint, Plaintiff admitted during depositions that no one ever told him he was placed in a sex offender unit in New Hampshire, he never actually registered as a sex offender, and he never actually attended any sex offender treatment programs while in New Hampshire. (*Id.* at 4.) Plaintiff likewise admitted that no New Jersey official ever told him to register under Megan's Law, nor stated that he was a sex offender or that he should be treated as such. (*Id.*) Plaintiff claims, however, that New Hampshire officials told him he was required to register and attend

---

[1] One of Plaintiff's offenses was for a violation of New Jersey's endangering the welfare of a child statute, which seems to be the source of New Hampshire's confusion, as this offense at times may constitute a sex offense but does not in this instance. (*Id.*)

3

Plaintiff's stigma plus Due Process claim is fatally flawed. All of the named Defendants in this matter are employees of the New Jersey Department of Corrections. As Plaintiff himself admits, his face sheet correctly stated that he was not a sex offender, and when asked by New Hampshire officials, Defendant Palumbo specifically clarified that Plaintiff was not a sex offender and sent an updated face sheet. The other Defendants at most failed to correct the misapprehension of New Hampshire officials over whom they had no clear control. Plaintiff has thus not provided evidence to support any assertion that the named Defendants in this matter made materially false and stigmatizing statements about Plaintiff, nor that any statements made by them caused him reputational harm, or the deprivation of an additional interest beyond mere reputation sufficient to trigger Due Process protections.

Indeed, by Plaintiff's own admission, all of Plaintiff's issues arose when a New Hampshire official sent him a letter, that letter was read by a Lieutenant in the New Hampshire prison, and that Lieutenant spread rumors that Plaintiff was a pedophile. (*See* ECF No. 87-2 at 3.) It was these rumors that led to the attack on Plaintiff. (*Id.*) Both the stigma and any loss in the personal security of Plaintiff's information, the bases Plaintiff asserts to support his claim, arise entirely from the actions of third parties in New Hampshire who had already been apprised by at least one Defendant that they were mistaken. There is simply no direct connection between the named Defendants here, and the stigmatizing lies made by a Lieutenant in New Hampshire. It may well be the case that Plaintiff could have pursued a claim in New Hampshire against that individual, but that individual's misdeeds are not a sufficient basis for raising a claim against the NJDOC officials against whom Plaintiff brought suit in this matter. Defendants did not make any false, stigmatizing claims, nor can the false statements made by the New Hampshire officer in any way be attributed to them. Defendants are thus clearly entitled to summary judgment as to Plaintiff's Due Process stigma plus claim.

As an alternative, Plaintiff also points to stigma plus adjacent cases such as *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010.) In that case, the Third Circuit recognized that prisoners have a protected liberty interest in "not being classified as a sex offender . . . *and* [being] forced into sex offender treatment without due process." *Id.* at 326. Under that rubric, however, it is not the mere label, which essentially acts as the stigma, that gives rise to a protected interest, but also the imposition of mandatory sex offender treatment programs. *Id.* at 326-27. Although Plaintiff was improperly labeled by New Hampshire officials, and told he would need to undergo treatment, he was never actually compelled to undergo treatment by his own admission. (ECF No. 82-2 at 4; ECF No. 87-1.) None of the named Defendants labeled him a sex offender. None of the named Defendants compelled him into intensive sex offender treatment. Indeed, the only Defendant contacted by New Hampshire about the issue clearly stated that Plaintiff was *not* a sex offender. Even construed under the more specific subset of stigma plus Due Process discussed in *Renchenski*, Defendants clearly did not violate Plaintiff's rights as they did not engage in the alleged violations, and Defendants are clearly entitled to judgment under *Renchenski*.

Defendants also argue that Plaintiff has failed to show that they were personally involved in the harm he suffered. To plead a plausible claim for relief under § 1983, a plaintiff must plead facts which would show that the named defendants had personal involvement in the alleged wrongs; a claim may not be based solely on a vicarious liability theory. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Alternatively, a plaintiff seeking to show personal involvement for a supervisor may plead facts which show that the alleged constitutional violation is the result of a policy, practice, or custom

7

put into effect by the supervisor. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). A plaintiff cannot show personal involvement by showing that a defendant was merely the recipient of a prison complaint or grievance. *Rode*, 845 F.2d at 1207-08; *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy" the personal involvement standard); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("failure to take corrective action when grievances or investigations were referred" to defendants does not amount to personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (inappropriate grievance responses do not amount to personal involvement in complained of mistreatment).

Here, Plaintiff connects Defendants to his claims solely on their failure to take corrective action after he sent them each a single letter or phone call, or, in the case of Defendant Palumbo, her failure to ensure that New Hampshire made proper use of the *correct* information she provided them. If a failure to respond to a formal grievance is insufficient to support personal involvement, the same is true of the failure to take corrective action after an informal phone call or letter, especially in light of the short time frame between Plaintiff's letters and call, and the attack on his person, as well as the fact that Defendants have no control over New Hampshire officials. Moreover, Defendant Palumbo did take corrective action when New Hampshire raised the issue, by clarifying Plaintiff's status. Thus, there is no evidence connecting the actions of Defendants to the alleged wrong Plaintiff suffered – they did not impose the conditions upon him, they did not spread false rumors regarding his charges, and Palumbo even sought to correct the misapprehension of the New Hampshire officials. Clearly, Plaintiff has failed to produce evidence sufficient to support the inference that Defendants were personally involved in the unfortunate events that he experienced in New Hampshire. Defendants are entitled to judgment as a matter of law for this reason as well.

Finally,[2] Defendants argue that they are entitled to qualified immunity as to Plaintiff's claim as the basis for the claim was not clearly established. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)). In determining whether immunity applies, courts use a two-pronged test: "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. New Jersey State Pol.*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and, when so defined, the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70.

---

[2] Defendants also contend that Plaintiff failed to avail himself of all available state process when he failed to raise a claim to the Appellate Division as to Defendants' inaction. Because this Court finds in favor of Defendants for the reasons expressed in this opinion, this Court need not and does not address this argument.

9

For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

Here, the nature of Plaintiff's claim is not a standard stigma plus Due Process claim, but rather a stigma plus claim where Plaintiff seeks to hold Defendants responsible for the defamatory actions of third parties employed by a different state, over whom they had no direct control, and to whom they provided accurate information. Defined at this appropriate level of specificity, Plaintiff has utterly failed to show that such a claim has been clearly established. Plaintiff relies on the general stigma plus theory and cases such as *Renchenski* to support his belief that the right in question was clearly established, but none of those cases match with appropriate specificity the claim Plaintiff asserts in this matter. He does not assert that Defendants mislabeled him a sex offender or made false stigmatizing statements – he freely admits they provided correct information stating he was not a sex offender both initially and when contacted by New Hampshire officials. Instead, his claim arises out of Defendants alleged failure to actively force another state over whom they had no clear authority *not* to mislabel Plaintiff after having already been provided accurate information by Defendants *twice*. Indeed, Plaintiff has failed to produce any case finding such a right or establishing such a right, and this Court is not aware of any such case. Thus, the right at issue here was not clearly established at the relevant time, and Defendants are entitled to summary judgment for this reason as well. Defendants' motion shall therefore be granted, and judgment entered in their favor.

## IV. CONCLUSION

In conclusion, Defendants' Motion for Summary Judgment (ECF No. 82) is granted, and judgment shall be entered in favor of Defendants' as to the sole claim in Plaintiff's operative amended complaint. An appropriate order follows.

Hon. Karen M. Williams,<br>
United States District Judge